IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| AMEC E&C SERVICES, INC., ) ) | |
| ) | Civ. No. 01-490-E-BLW |
| Plaintiff, ) ) | |
| ) | MEMORANDUM DECISION |
| v. ) | AND ORDER |
| ) ) | |
| NU-WEST INDUSTRIES, INC., ) ) ) | |
| Defendant. ) ) | |

## INTRODUCTION

The Court has before it a motion for partial summary judgment filed by AMEC and a motion under Rule 56(f) filed by NuWest. The Court heard oral argument on June 14, 2005, and took the motions under advisement. For the reasons expressed below, the Court will deny the motion for partial summary judgment. For that reason, the Rule 56(f) motion is moot.

## ANALYSIS

The background of this litigation has been set forth in prior decisions and will only be summarized briefly here. NuWest claims that AMEC violated Section

**Memorandum Decision & Order -- page 1**

1 of the Sherman Act by conspiring with Bodell to allow Bodell to raise its bid, and to exclude a competitor from bidding, resulting in NuWest paying higher prices. AMEC seeks summary judgment on this claim, while NuWest seeks additional time to conduct discovery under Rule 56(f).

To prove a violation of § 1 of the Sherman Act, NuWest must show (1) an agreement, conspiracy, or combination among two or more entities and (2) that the agreement, conspiracy, or combination was unreasonable. *Paladin Associates, Inc. v. Montana Power Co.*, 328 F.3d 1145 (9th Cir. 2003). AMEC argues that "[w]here, as in this case, increasing Bodell's bid was clearly against AMEC's self-interest, the circumstantial evidence that an AMEC employee provided Bodell with confidential information in the hope that Bodell would act on that information and reward him in the future is not evidence that AMEC and Bodell each made a 'conscious commitment to a common scheme.'" *See AMEC Brief* at pp. 3-4. AMEC goes on to argue that Nu-West cannot escape summary judgment by merely presenting circumstantial evidence of arguably concerted activity between AMEC and Bodell if inferences of unilateral conduct can be drawn just as reasonably from that evidence, citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

The Court disagrees with this analysis for two reasons. First, it is not self-

**Memorandum Decision & Order -- page 2**

evident that increasing Bodell's bid "was clearly against AMEC's self-interest" since AMEC is alleged to have received a kickback for doing so.  Second, *Matsushita* is inapplicable because there is direct evidence that AMEC was involved: LeRoy Humpke of Bodell testified that when AMEC's Contract Manager, Rick Burwood, called to tell him the bid amounts, Burwood said that "his boss instructed him to help [Bodell] with these pipes – these unit price numbers."  *See Humpke Deposition* at p. 67, ll. 12-19.[1]

There are, therefore, questions of fact on whether NuWest has satisfied the first element of a § 1 claim, requiring the showing of an agreement.  AMEC responds that nevertheless, NuWest cannot prove the second element, that the restraint was unreasonable.

In examining this claim, the Court must "at the threshold" decide whether the alleged restraint was *per se* illegal or whether the restraint must be analyzed under the "rule of reason."  *Paladin*, 328 F.3d at 1154.  Treating an agreement as

---

[1] This statement would appear at first glance to be double hearsay: Hempke's statement about what Burwood told him is the first level of hearsay, while the second level is what Burwood's "boss" told Burwood.  No objection was raised by AMEC, however, and hence the Court may consider the statement. *Skillsky v. Lucky Stores*, 893 F. 2d 1088, 1094 (9th Cir. 1990).  Indeed, the deposition excerpt was attached to an affidavit of AMEC's counsel filed in support of AMEC's motion.  It should be noted that the statement may not be hearsay at either level since it may fall within the non-hearsay provisions of Rule of Evidence 801(d)(2)(A),(C), or (D).  However, the Court need not resolve this evidentiary issue because the statement can be considered in this summary judgment proceeding due to AMEC's lack of objection.

**Memorandum Decision & Order -- page 3**

*per se* illegal is appropriate only if the agreement falls within the category of "agreements or practices which because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use." *Id.* The decision to apply the *per se* rule turns on "whether the practice facially appears to be one that would always or almost always tend to restrict competition and decrease output." *Id.*

Giving further guidance, the Ninth Circuit has held *per se* categories are not to be expanded indiscriminately to new factual situations. *International Healthcare Management v. Hawaii Coalition*, 332 F.3d 600, 605 (9th Cir. 2003). A particular course of conduct is not considered a *per se* violation until the courts have had "considerable experience" with that type of conduct and application of the rule of reason has inevitably resulted in a finding of anticompetitive effects. *United States v. Topco Assocs., Inc.,* 405 U.S. 596, 607-08 (1972).

The parties found no Ninth Circuit cases directly on point. The Third Circuit has resisted treating bid manipulation between non-competitors as *per se* illegal, although the decision contained no analysis. *United States v. Sargent*, 785 F.2d 1123 (3rd Cir. 1986). The Seventh Circuit, in a decision written by Judge Posner, an antitrust expert, interpreted the term "bid-rigging" in the Sentencing

**Memorandum Decision & Order -- page 4**

Guidelines to mean agreements among competitors, reasoning in part that the "vast majority of the cases in which the term has appeared have treated it as a synonym for bid rotation [*i.e.,* agreements among competitors]." *United States v. Heffernan*, 43 F.3d 1144, 1146 (7th Cir. 1994).

NuWest cited *F. Buddie Contracting, Inc. v. Seawright*, 595 F.Supp. 422 (N.D. Ohio 1984), and *Philip Morris v. Henrich*, 1996 WL 363156 (S.D.N.Y. 1996), for the proposition that bid manipulation between non-competitors should be *per se* illegal. However, *Buddie* expressly declined to decide that issue, *Buddie,* 595 F.Supp. at 437, n. 15, and *Henrich* involved price fixing by competitors.

Recalling that the decision to apply the *per se* rule turns on "whether the practice facially appears to be one that would always or almost always tend to restrict competition and decrease output," *Paladin*, 328 F.3d at 1154, the bid manipulation involved here would not meet that test, at least as to AMEC's sharing of bid pricing information. That conduct does not always tend to restrict competition – for example, bids that are too low can expose the bidder to bankruptcy, causing attendant delays for the owner. To avoid this, the owner may share bid information with the low bidder, to persuade him to be more realistic and submit a higher bid, even though it might mean a higher price for the owner.

But NuWest's claims are not limited to sharing information; NuWest also

**Memorandum Decision & Order -- page 5**

asserts that AMEC and Bodell acted in concert to exclude CDK, a competitor of Bodell's, from the bidding, thereby increasing the price Nu-West had to pay. Under *Paladin*, the exclusion of a competitor would be *per se* illegal conduct. There are questions of fact precluding a summary judgment on whether AMEC and Bodell acted in concert to exclude a competitor from the bidding, so as to subject AMEC to *per se* liability on Nu-West's Sherman Act claims.

 AMEC's motion for summary judgment fares even less well under "rule of reason analysis, where "the factfinder weighs all of the circumstances of a case in deciding whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition." *Continental T.V., Inc. V. GTE Sylvania, Inc.,* 433 U.S. 36, 49 (1977).   The jury will determine whether the restraint is unreasonable by "balanc[ing] the restraint and any justification or pro-competitive effects of the restraint."  *Oltz v. St. Peter's Community Hospital*, 861 F.2d 1440, 1445 (9th Cir. 1988).   Because of the fact- and intent-sensitive nature of this inquiry, "[t]he law clearly envisions that the balancing test is normally reserved for the jury." *American Ad Management, Inc. V. GTE Corp.*, 92 F.3d 781, 791 (9th Cir. 1996).  AMEC has not met the difficult burden of establishing the absence of a genuine issue of material fact on the question of whether its actions were reasonable – either because those actions were somehow justified or because they

**Memorandum Decision & Order -- page 6**

were pro-competitive in effect.   Accordingly, the Court will also deny summary judgment under a "rule of reason" analysis.

These findings render moot NuWest's motion under Rule 56(f).

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion for partial summary judgment (docket no. 234) is DENIED.

IT IS FURTHER ORDERED, that the motion for Rule 56(f) relief (docket no. 238) is DEEMED MOOT.

DATED:  **July 29, 2005**

B. LYNN WINMILL
Chief Judge
United States District Court

**Memorandum Decision & Order -- page 7**